UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | | |
|---|---|---|---|
| WALTER LEON TRENT, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos. | 2:14-CR-40 |
| | ) | | 2:16-CV-82 |
| UNITED STATES OF AMERICA, | ) | | *Judge Jordan* |
| | ) | | |
| Respondent. | ) | | |

## <u>MEMORANDUM OPINION</u>

After pleading guilty to conspiracy to distribute Morphine and being a felon in possession of a firearm, Walter Leon Trent ("Petitioner") was sentenced to 71 imprisonment. Petitioner has now filed a pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Doc. 1].[1] Petitioner has also submitted a supporting brief [Doc. 2], along with numerous additional filings. Among those are: motions for documents or to compel discovery [Docs. 6-7]; a supplement to his § 2255 motion [Doc. 8]; a motion for a ruling on his § 2255 motion [Doc. 13]; a motion to amend his motion to vacate [Doc. 15]; a motion for default on the government [Doc. 16]; and a motion to remove his motion seeking documents [Doc. 24].

The United States responded in opposition first to Petitioner's motion to vacate [Doc. 4], then to his supplement and motions to amend, for discovery and for a default [Doc. 18]. Petitioner replied to the Government's response to the § 2255 motion [Doc. 5], as well as to its latter response to his supplement and motions [Doc. 21].

---

[1] Unless otherwise indicated, docket references are to document numbers in Case Number 2:16-CV-82.

The Court finds that the materials thus submitted, together with the record in the underlying criminal case, conclusively show that Petitioner is not entitled to relief on his § 2255 claims. Accordingly, the Court will decide Petitioner's motion to vacate without an evidentiary hearing. *See United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993). For the reasons discussed below, the Court finds that Petitioner's § 2255 motion lacks merit and, thus, will **DENY** and **DISMISS** his § 2255 motion **WITH PREJUDICE**.

## I.     PROCEDURAL HISTORY

On April 8, 2013, a federal grand jury filed a 9-count Indictment charging Petitioner with various offenses [Doc. 1 in Case No. 2:14-CR-40]. This Indictment alleged that Petitioner conspired to possess with the intent to distribute Morphine, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846 (Count 1); conspired to possess with the intent to distribute Suboxone, in violation of 21 U.S.C. §§ 841(b)(E) and 846 (Count 2); possessed a firearm after having been convicted of a felony, in violation of 18 U.S.C.§ 922(g)(1) (Counts 3-8); and possessed one or more firearms in furtherance of a drug trafficking offense, a violation of 18 U.S.C.§ 924(c)(1)(A) (Count 9) [*Id.*, Case No. 2:14-CR-40].

Petitioner initially retained Attorney Renfro Baird to represent him and later retained Attorney Richard A. Spivey, who acted as Petitioner's lead counsel [Docs. 4, 27 in Case No. 2:14-CR-40]. The parties negotiated a Rule 11(c)(1)(C) plea agreement, in which Petitioner would plead guilty to Counts 1 and 7 of the Indictment, with an agreed sentence of 78-months' imprisonment [Doc. 29 in Case No. 2:14-CR-40]. All remaining counts were to be dismissed at sentencing [*Id.*]. In that agreement, Petitioner acknowledged that he was accountable for distributing approximately 200 Morphine 100 mg pills per month for a 16-month period and that those figures computed to a total of 320 grams of Morphine. [*Id.* ¶ 4(g) in Case No. 2:14-CR-40].

Petitioner also agreed to the application of three two-level enhancements under United States Sentencing Guidelines ("USSG") §§ 2D1.1(b)(1) (possession of a dangerous weapon, namely, the various handguns located in his residence), 2K2.1(b)(1)(A) (possession of between 3 and 7 firearms), and 2D1.1(b)(12) (maintaining a drug-distribution premises) [*Id.* ¶ 4(h)-(j) in Case No. 2:14-CR-49]. Petitioner entered his guilty pleas to those two counts [Doc. 32 (criminal minutes, Jan. 8, 2015) in Case No. 2:14-CR-40], and, thereafter, the U.S. Probation Office prepared a Presentence Investigation Report ("PSR") to assist the Court in sentencing Petitioner [Doc. 34 (sealed) in Case No. 2:14-CR-40].

When a defendant has been convicted of multiple counts, as was Petitioner, USSG § 3D1.1 establishes a three-step procedure for determining total combined offense levels: "(i) all counts are separated into "groups" of "closely related" counts in accordance with the rules set forth in § 3D1.2, which allow for single as well as multiple-count groups; (ii) the count with the highest offense level in each group is used to determine that group's offense level in accordance with the rules set forth in § 3D1.3; and (iii) if application of § 3D1.2 results in more than one group, then, in accordance with the rules set forth in § 3D1.4, each group is assigned a number of "units," and these units are used to increase the offense level of the group with the highest offense level, thus producing a "total combined offense level" for the entire multi-count conviction." *United States v. Napoli*, 179 F.3d 1, 6 (2d Cir. 1999).

The Morphine-conspiracy offense in Count 1 and the felon-in-possession offense in Count 7 were grouped under USSG § 3D1.2(d). Petitioner's base level offense for Count 1 was 24 because it involved 320 grams of Morphine, with a equivalency of 160 kilograms of Marijuana. Increasing the base offense level by two levels under § 2D1.1(b)(1) (possession of a dangerous

weapon) and two levels under § 2D1.1(B)(12) (maintaining a drug-distribution premises) resulted in an adjusted offense level of 28 for the Count 1 group.

The base level offense for the felon-in-possession offense in Count 7 was 14, pursuant to § 2K2.1(4)(6)(A). A two-level increase was applied under § 2K2.1(b)(1)(A) because six firearms were found in Petitioner's residence. Four levels were added for possessing a firearm in connection with another felony offense, § 2K2.1(b)(6)(B), which resulted in an adjusted offense level of 20. Because the higher offense level was 28 in Count 1, the total combined offense level for both counts was 28. Three points were deducted from that figure for acceptance of responsibility, leading to a total offense level of 25.

Based on a criminal history category of I and a total offense level of 25, Petitioner's advisory guidelines range was 57 to 71 months imprisonment. Because the 78-month sentence provided for in the plea agreement exceeded Petitioner's guidelines range, the parties amended the plea agreement to an agreed-upon sentence of 71 months [Doc. 40 in Case No. 2:14-CR-40]. There were no objections to Petitioner's PSR and the Court imposed a total 71-month sentence [Docs. 35, 41 in Case No. 2:14-CR-40].

Petitioner did not appeal, in keeping with his limited waiver of appeal rights in the plea agreement [Doc. 29 ¶ 10(a) in Case No. 2:14-CR-40]. There followed this instant § 2255 motion.

## II.    FACTUAL BACKGROUND

The factual scenario surrounding Petitioner's offenses is derived from his stipulations in his plea agreement [*Id.* ¶4(a)-(f) in Case No. 2:14-CR-40].

On April 23, 2013, Sergeant David Benton, a member of the Narcotics Division of the Hawkins County, Tennessee Sheriff's Department, obtained a state search warrant for Petitioner's residence, based, in part, on statements made by a confidential informant that Petitioner was selling

prescription drugs. The informant indicated that he had been to Petitioner's residence on four occasions with others who had purchased anywhere from one to five tablets of Opana, a schedule II-controlled substance. Additionally, surveillance of the residence showed that several vehicles would come to the residence, would stay for only a short period of time, and then would leave—all of which was consistent with drug dealing activity.

On April 25, 2013, a state search warrant was executed at Petitioner's residence. During the search, law enforcement officers recovered 12 Morphine pills, several Suboxone strips, and 5 empty prescription bottles bearing others' names. Petitioner's wallet contained $1,572.00.

Petitioner cooperated with law enforcement officers and provided a truthful statement regarding his drug distribution. Petitioner admitted that he had never used drugs but that he sold them, stating that he became a "big time" dealer after his incarceration for a prior Marijuana-related conviction. Additionally, Petitioner said that he has seven or eight "customers" who would bring him prescriptions after the prescriptions are filled and that he paid these "customers" a flat rate of $20 per pill. Petitioner stated that he recently started getting about 300-400 Roxys, 200 Morphine pills, and 150 Opanas, and 76 Suboxone strips per month and that he resells the Roxys and Opanas for $30 each, the Morphine for between $30-$40, and the Suboxone for $20 per strip.

Officers executing the search warrant also located six firearms throughout Petitioner's house. Petitioner admits that one of these firearms was the Amadeo Rossi, .357 magnum revolver listed in Count 7 of the Indictment. Petitioner further admitted that the Amadeo Rossi, .357 magnum revolver was manufactured outside the state of Tennessee and therefore traveled in or affected interstate or foreign commerce.

Based on the evidence summarized above, Petitioner pled guilty and was convicted of the two counts as set forth in his plea agreement.

The Court turns first to Petitioner's motions and submissions filed after his initial § 2255 motion.

### III.    PETITIONER'S LATER-FILED MOTIONS

**A.    Motion for Documents**

In Petitioner's letter motion for documents [Doc. 6], he asks that either the Court or his attorney send him all discovery "pertaining to his case," including forms, memos, and evidence; all Hawkins County, Tennessee search warrants; a copy of his Presentence Investigation Report; a list of all property, including cash and belongings, that was confiscated by the Department of Justice and the identification of the holder(s) of such property; and a list of property taken by Hawkins County.

After filing his letter motion seeking documents, Petitioner filed a motion requesting that his motion for documents be removed from the case [Doc. 24, "Motion to Remove Document 50"]. Petitioner maintains the he did not file the motion for documents but that he thinks the motion was filed by an Edwin Harris, a fellow inmate who fashions himself a lawyer and who involves himself in other inmates' cases.

The motion to remove the motion for documents [*Id.*] is unopposed and will be **GRANTED**.

**B.    Motion for an Order**

In Petitioner's second letter motion [Doc. 7], he asks the Court to order his attorneys to release to him copies of the documents in his case files. "[W]ith respect to criminal defendants seeking copies of their attorney's records after a conviction, "no statute guides this analysis," but such requests have been construed "as requests for discovery." *United States v. Farrad*, No.

314CR110TAVDCP1, 2018 WL 4939277, at *1 (E.D. Tenn. Aug. 29, 2018) (quoting *United States v. Turner*, No. 3:08-cr-141, 2016 WL 5887760, at *3 (S.D. Miss. Oct. 7, 2016)).

Discovery in a § 2255 motion is not automatic, but may be warranted upon a showing of good cause. Rule 6(a), Rules Governing Section 2255 Proceedings. Also, the "party requesting discovery must provide reasons for the request." Rule 6(b), Rules Governing Section 2255 Proceedings. Good cause is shown "'where specific allegations . . . show reason to believe that [the movant] may, if the facts are fully developed, be able to demonstrate'" that he is. . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).[2] Rule 6 does not permit "a fishing expedition masquerading as discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001) (§ 2254 petition).

Here, as the United States points out in its response to the motion [Doc. 18], Petitioner articulates no nonfrivolous claim and he identifies no specific facts allegedly contained in his files that would assist him in obtaining relief on any such a claim.[3] In the absence of any explanation that would give this Court reason to believe that Petitioner could demonstrate that he is due § 2255 relief if he were able to develop the facts fully in connection with a claim he is asserting or would like to assert, the Court will **DENY** Petitioner's motion for an order [Doc. 7] for lack of good cause.

---

[2] Although *Bracy* involved a § 2254 proceeding, "[p]recedents under § 2255 and under § 2254 may generally be used interchangeably." *United States v. Asakevich*, 810 F.3d 418, 423 (6th Cir. 2016) (quoting 3 Charles Alan Wright *et al.*, Federal Practice and Procedure § 623 (4th ed. 2015)); *see also* Advisory Committee Notes 1976 Adoption (observing that the discussion of Rule 6 in § 2254 proceedings "is fully applicable to discovery" under Rule 6 in § 2255 proceedings).

[3] In Petitioner's reply to the United States' response to his § 2255 motion, supplement, and motion to amend, he acknowledges that Attorney Spivey supplied Petitioner with "copies of what he had" and that those materials were then filed in this Court as evidence to support his § 2255 claims involving the search warrant, the plea agreement, and the quantity of drugs for which he was held accountable [Doc. 21 at 2-3].

**C.     Supplement to the § 2255 Motion and Motion to Amend § 2255 Motion**

Because the claims asserted in the supplement and the motion to amend rely on either "newly obtained evidence" or "newly discovered evidence," the Court has combined them for discussion.

**1.     The Claims**

**a.     Supplement**

In Petitioner's supplement [Doc. 8, filed November 3, 2016], he maintains that he has "newly obtained evidence" to show that the search warrant issued by a state judicial officer and the subsequent search of Petitioner's residence in 2013 was illegal in several respects; that his arrest was unlawful; that there are discrepancies in the form he signed at the time of the search waiving his rights under *Miranda v. Arizona*, 384 U.S. 436 (1977); and that his attorneys (including counsel in Petitioner's state criminal prosecution)[4] failed to raise these and a variety of other issues because they were working with the government and not for Petitioner who had paid them to represent him.  With regard to the questioned search, Petitioner more specifically maintains that one affidavit supporting the search was left at his residence and that a second affidavit, filed with the Clerk of Court on April 30, 2013, varies in certain respects from the one that was left at his house [*Id.*].  Petitioner explains that he received the information regarding the alleged illegalities in the warrant, its execution, and his arrest on October 5, 2016, although his attorneys knew of the information earlier [*Id.* at 1, 12].

---

[4] A challenge to a sentence in a § 2255 motion is limited to a sentence that was issued by "a court established by Act of Congress."  28 U.S.C. § 2255(a).  Thus, Petitioner's attack on his state sentence by means of an assertion that he received ineffective assistance of counsel in his state criminal proceedings lies outside the statutory authority conferred on this Court by § 2255.  Therefore, this Court will not entertain or discuss further any challenge to Petitioner's state criminal proceedings, in whatever form such a challenge is presented in these § 2255 proceedings.

### b. Motion to Amend

In Petitioner's motion to amend his § 2255 motion [Doc. 15, filed on December 4, 2017], he similarly asserts that he has "newly discovered evidence" and that such evidence shows that that the government's attorney used information Petitioner disclosed during his interrogation to increase the quantity of drugs and to enhance Petitioner's sentence, contrary to the assurances given to Petitioner by his counsel, Attorney Baird, who was present but impaired during his client's questioning. Petitioner contends that the prosecutor was not supposed to use any evidence against him that was gleaned from his admissions during the questioning and that (reading between the lines) the use of such evidence constitutes a breach of his plea agreement [Doc. 15-1 at 1].

Petitioner further contends that drugs belonging to his housemate, Paul Smith, could not be used against Petitioner, nor could the firearms found in Petitioner's residence be used as a basis for criminal charges against him or to enhance his sentence. The firearms-related claim is based on Petitioner's allegations that documents he has filed prove that he could legally buy, possess, and own firearms and that he did not use or carry firearms in connection with a drug trafficking offense.[5] Petitioner insists that those weapons were not involved in protecting any drugs.

Petitioner recognizes that, in his signed plea agreement, he stipulated to the drug quantities for which he would be held accountable and to the firearms and drug-premises enhancements, but he nonetheless asserts that his attorney did not read the plea agreement to him or allow him to read it. As to the drug quantities and enhancements that were included in Petitioner's PSR, the

---

[5] Count nine of the Indictment alleged possession (not use or carrying) of one or more firearms in furtherance of a drug trafficking offense [Doc. 1 at 4], but this count was dismissed at sentencing upon the government's motion [Doc. 41]—a motion made pursuant to a provision in the plea agreement [Doc. 29 at ¶2]. Moreover, as will be discussed later in this Memorandum Opinion, Petitioner voiced his understanding at his sentencing hearing that his right to possess firearms had been restored and that he legally could possess those firearms.

transcript of the sentencing hearing discloses that Attorney Spivey acknowledged that he did not

go over the PSR "personally" with Petitioner, but maintained that Petitioner was aware of it,

indicated that the main ingredient in sentencing was "the agreed sentence of 71 months," and

surmised that "probably" Attorney Baird discussed the PSR with Petitioner [Doc. 2-1, Sent. Tr. at

2-3].

### 2. Timeliness of the Claims

A federal prisoner has one year in which to file a § 2255 motion, including any amendments

to the motion. *Mayle v. Felix*, 545 U.S. 644, 654 (2005) (citing to 28 U.S.C. § 2255, ¶ 6 (now §

2255(f)) as providing a "one-year limitation period in which to file a motion to vacate a federal

conviction"); *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) ("Any attempt to raise

a new claim for relief in a Rule 15 motion to amend pleadings is subject to AEDPA's one-year

statute of limitations."). The one-year period commences on one of four triggering dates. 28

U.S.C. § 2255(f)(1)-(4). Two of those dates are pertinent in the determination as to whether

Petitioner's proposed new claims are outside the one-year period set forth in § 2255(f)(1) and §

2255(f)(4).

### a. Section 2255 (f)(1)-Conclusion of Direct Appeal

The triggering date in the first subsection of § 2255 is the date that a conviction becomes

final. 28 U.S.C. § 2255(f)(1). It is this subsection which will apply to the filing of the typical

motion to vacate. Here, Petitioner's judgment issued on April 13, 2015 [Doc. 41 in Case No. 2:14-

CR-40], and he did not file a notice of appeal within the required fourteen days. Fed. R. App. P.

4(b)(1)(A)(i). Thus, on April 28, 2015, the time to file a notice of appeal lapsed and Petitioner's

conviction became final. *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004)

(holding that "the judgment becomes final upon the expiration of the period in which the defendant

could have appealed to the court of appeals, even when no notice of appeal was filed"). Therefore, Petitioner had one year from April 28, 2015, i.e., until April 28, 2016, to file a timely § 2255 motion and any amendments to the motion.

Petitioner's motion to vacate [Doc. 1] was timely because it was filed on April 8, 2016, under the "prison mailbox rule" in *Houston v. Lack*, 487 U.S. 266 (1988). *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (applying *Houston*'s "prison mailroom filing rule" to a § 2255 motion). However, Petitioner's supplement [Doc. 8], filed on November 1, 2016, and his motion to amend his § 2255 motion [Doc. 15], filed on November 30, 2017, were filed respectively 188 days and 582 days after the lapse of the statute of limitations in § 2255(f)(1) for filing any amendments to his § 2255 motion.

**b.        Section 2255(f)(4)—Newly Discovered Factual Predicate**

An alternative statute of limitations is provided in § 2255(f)(4), and its one-year period runs from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  *Id*.  Petitioner relies on "newly obtained evidence" and "newly discovered evidence" in his supplement and motion to amend, which the Court construes as an invocation of subsection four in order to trigger a new statute of limitations. The diligence required in subsection four is "only due, or reasonable, diligence" and not "the maximum feasible diligence."  *DiCenzi v. Rose*, 452 F.3d 465, 470 (6th Cir. 2006) (internal quotation marks omitted).  The date that Petitioner actually discovered the factual predicates of his proposed claims is irrelevant to the inquiry.  *Schlueter v. Varner*, 384 F.3d 69, 74 (3d. Cir. 2004) ("By its language, the one-year period of limitation commences . . .  when the factual predicate of a claim could have been discovered through the exercise of due diligence, not when it actually was

discovered.").  Furthermore, it is a petitioner's burden to prove that he exercised due diligence to start a new statute of limitations.  *DiCenzi*, 452 F.3d at 471.

Petitioner asserts that he received the "newly obtained evidence" that supports his supplemental claims on October 5, 2016, when Attorney Spivey sent him copies of Petitioner's files [Doc. 8 at 1].  *See ante*, at 7 n.3.  Petitioner, as noted, faults his attorneys for failing to furnish him with copies of his files to justify a new statute of limitations for his supplement and his motion to amend [Doc. 8 at 13, Doc. 21 at 3 (insisting that the "supplemental motions" could not have been discovered earlier because [Petitioner's] attorneys would not release the information")].  Petitioner does not allege the date that he knew of facts to support claims offered in his motion to amend.

### c.  Analysis

The first task for a court considering whether a new statute of limitations is triggered under § 2255(f)(4) is to engage in a "fact specific inquiry" to determine the date on which the factual predicate for a proposed claim is first discoverable.  *Id.* at 465.  With regard to Petitioner's supplement, the proper inquiry involves the determination as to the date that a reasonable person in his circumstances, exercising due diligence, would have discovered all the flaws in the issuance, service, execution, and results (i.e., drugs and firearms) of the search warrant and the consequent illegal arrest—the claims asserted in the supplement.  *See McDonald v. Warden, Lebanon Corr. Inst.*, 482 F. App'x. 22, 29 (6th Cir. 2012) (§ 2254 case).[6]

---

[6]  For the most part, 28 U.S. C. § 2254 and 28 U.S.C. § 2255 are counterparts of each other and the law applicable to one generally applies to the other.  *Davis v. United States*, 417 U.S. 333, 343-44 (1974); *Metheny v. Hamby*, 835 F.2d 672, 673-74 (6th Cir. 1987).

Petitioner stipulated in his signed plea agreement that his residence was searched in 2013, pursuant to a state search warrant; that drugs and firearms were discovered during that search; that he would be held accountable for 200 Morphine 100 mg pills a month for 16 months, for a total of 320 grams of Morphine; and that his sentence would be enhanced for the firearms found in his residence [Doc. 29 ¶ 4 in Case No. 2:14-CR-40]. Petitioner signed the plea agreement twice on consecutive days in December of 2014, and the agreement was docketed on December 15, 2014 [*Id.* at 8]. It appears that a reasonable person in Petitioner's circumstances would have known the facts upon which rest the claims he has asserted in his supplement in mid-December, 2014. Petitioner resists that determination by maintaining that counsel did not read the plea agreement to him or allow him to read it.[7]

The plea agreement was filed with the Court as an unsealed document. As such, it was a public record. *United States v. DeJournett*, 817 F.3d 479, 485 (6th Cir. 2016) (concluding "that plea agreements are the quintessential judicial record, entitled to the protection of the First

---

[7] Petitioner's assertion that counsel neither read the plea agreement to him or allow him to read it is undercut by the handwritten notation at the bottom of the last page of the plea agreement [Doc. 29 in Case No. 2:14-CR-40]. That notation reads: "*This plea agreement is not valid until signed by Walter Trent below. xxxx" [*Id.* at 8]. Petitioner's signature appears twice underneath that sentence (i.e., "Walter Trent" preceded by the date "12/10/12" and "Walter Trent 12-11-14") [*Id.*]. The purpose of the notation is somewhat obscure, but it may be anchored to paragraph 11 of the plea agreement, which provides, in relevant part: "This agreement becomes effective once it is signed by the parties . . .." [*Id.* at 7]. If the notation was induced by the effective-upon-signing provision in paragraph eleven then it logically follows that Petitioner knew (by reading the plea agreement himself, having it read or explained to him, or other means) of at least one provision in the plea agreement. Petitioner's assertion is also undermined by his reply to the government's response, wherein he maintains that "the plea agreement that Spivey read to the [Petitioner] left out the parts about agreeing to a 6-level enhancement" [Doc. 21 at 3]. Moreover, a handwritten add-on appears at the bottom of the supplement to the plea agreement which cross-references the notation at the bottom of the plea agreement itself [Doc. 30 (sealed) in Case No. 2:14-CR-40]. Finally, Petitioner's reply to the government's response to the § 2255 motion contains this sentence: "[Petitioner] states that on 12/10/14, [Petitioner's] lawyer Rick Spivey read [Petitioner] the plea agreement . . . [but] did not read . . . ¶4, A-J" [Doc. 49 at 6]. Paragraph four of the plea agreement contains the parties' stipulations of facts to support the guilty plea, to satisfy the offense elements, and to warrant the sentence enhancements [Doc. 29 at ¶4].

Amendment right to public access of judicial records"). There is no indication that Petitioner sought to obtain a copy of his plea agreement from the Clerk of Court, or that he is illiterate and could not read the plea agreement if he had acquired it. True, Petitioner's letter motion for discovery asked that either the Court or his attorneys send him "all discovery, forms, memo's (sic) and evidence, but the request was not made until August 29, 2016, and Petitioner moved to withdraw that request on June 18, 2018 [Docs. 6, 24].

The Court finds that a petitioner exercising due diligence could have discovered the facts regarding the legality of the search warrant, the quantity of drugs disclosed in his "confession" that were to be used against him in his sentencing calculation, the role the firearms discovered during the search would play in his sentences, and other proposed claims that rely on newly discovered evidence at least at the time his plea agreement was entered on December 15, 2014, or at the latest (assuming but not finding that the contents of his plea agreement were unknown to him in December, 2014), at the time of his sentencing on April 9, 2015 [Doc. 39 in Case No. 2:14-CR-40].

In addition, specifically with respect to the newly proposed "affidavit" sub-claim tied to issuance of the search warrant, the Court finds that Petitioner could have discovered on April 30, 2013, any inconsistencies between the affidavit left at his residence and the one filed on that date in the Hawkins County Clerk of Court's office. Courts have recognized that a defendant has a qualified right under the First and Fourth Amendments and under the common law to access an affidavit filed in support of a search warrant. *See United States v. Pirk*, 282 F. Supp. 3d 585 (W.D.N.Y. 2017) (listing cases); *Bennett v. United States*, No. 12-61499-CIV, 2013 WL 3821625, at *6 (S.D. Fla. July 23, 2013) (listing cases); *but see In re Search of Fair Fin.*, 692 F.3d 424, 430 (6th Cir. 2012) (finding that the First Amendment does not guarantee the public access to

documents involved with issuance of search warrants and that the Fourth Amendment has no bearing in such a situation). There is no indication that the search warrant documents filed in the Hawkins County Clerk's office were sealed, and Petitioner has not alleged that he requested from the Hawkins County Clerk a copy of his search warrant and affidavit.

Moreover, attached to Petitioner's Motion Directing Attorneys to Release Information are copies of letters he wrote to his attorneys seeking his files [Doc. 51 at 2-4]. One letter is dated August 29, 2016, and two are dated September 14, 2016 [*Id.*]. To wait some three years after 2013, when such information is available and can be obtained from state authorities, to seek it from one's attorneys does not show due diligence. Also, for purposes of determining whether a petitioner acts with due diligence, "a lawyer's knowledge is attributed to h[is] client." *Wood v. Spencer*, 487 F.3d 1, 4–5 (1st Cir. 2007). Petitioner has asserted more than once that his attorneys knew of the facts underlying the claims of error alleged as grounds for § 2255 relief.

With regard to the determination as to when the facts offered as support for Petitioner's claims in his motion to amend (i.e., that the plea agreement was breached when the government used against him evidence that was obtained from his confession and that the government, according to the advice given him by his counsel in his state criminal proceedings, was obliged not to use), those facts were available at the time of his sentencing. While Petitioner has not alleged the date that he learned of those facts, he has appended to his brief in support of his § 2255 motion a copy of the transcript of his sentencing hearing held on April 9, 2015 [Doc. 2-1].

The transcript shows that the prosecutor acknowledged that Petitioner's admissions, or what the government deemed to be a "confession," had "served forth a significant portion of the quantities [of drugs] that [the government was] able to attribute to him" [*Id.* at 5]. Similarly, the transcript discloses that, during Petitioner's allocution, he asserted that he had firearms because he

thought that he "had [his] rights back to have a gun . . . [and] got [his] rights of citizenship restored" [*Id.* at 9]. Thus, the Court finds that, as of April 9, 2015 [*Id.* at 1], Petitioner had access to the factual bases underlying his new claims (i.e., that his sentence was unlawfully enhanced based on information he disclosed under questioning by the prosecutor and that he had a right to own a gun).

For these reasons, the Court simply is not convinced that Petitioner was duly diligent in his search. The Court thus concludes that Petitioner has not satisfied his burden of establishing that he was duly diligent in his pursuit of the new claims raised in his supplement and in his proposed amended § 2255 motion. *See Stokes v. Leonard*, 36 F. App'x 801, 804 (6th Cir. 2002) (finding that a "petitioner has the burden of persuading the court that he has exercised due diligence in his search for the factual predicate of his claim." (citing *Lott v. Coyle*, 261 F.3d 594, 605-06 (6th Cir. 2001) (§ 2254 case)).

The Court further concludes that Rule 15(c)(1) (permitting an amendment that relates back to the date of the original pleading containing a subject claim) provides Petitioner no refuge because Rule 15(c) "relaxes, but does not obliterate, the statute of limitations" and because his newly-proposed claims are based on facts separated in both time and type from those advanced in his § 2255 motion. *See Mayle*, 545 U.S. at 657-59. Accordingly, Petitioner's new claims do not commence a new statute of limitations under 28 U.S.C. § 2255(f), and they are now time-barred. *See Howard*, 533 F.3d at 475 (finding that Rule 15 motions to amend pleadings are subject to the statute of limitation in § 2255(f)).

Based on the above analysis, Petitioner's motion to amend his § 2255 motion [Doc. 15] is time-barred and will be **DENIED**.

### D. Motions for a Ruling and for a Default

Petitioner moves the Court to issue a ruling on his § 2255 motion and supplement [Doc. 13]. Petitioner maintains that those submissions prove that his arrest and prosecution were based on an illegal search warrant executed on April 25, 2013 [*Id.*]. While the Court disagrees with Petitioner's conclusion that his submissions prove that his federal prosecution was unlawful, his motion for a ruling will be **GRANTED** [*Id.*]. The Court this day will enter a judgment ruling on Petitioner's motion to vacate.

Petitioner's motion for a default against the government [Doc. 16] is not as well taken. Petitioner correctly points out that the government did not respond timely to the Court's order to respond to Petitioner's supplement and to certain motions. However, shortly after Petitioner sought a default, the government moved for an extension of time to respond to the Court's order [Doc. 17] on the basis that its failure to respond was inadvertent. The government also furnished a detailed narrative in its motion to explain its shortcoming. The government also separately filed the ordered response [Doc. 18]. The Court granted the government's motion *nunc pro tunc* [Doc. 19]. Therefore, Petitioner's motion for a default [Doc. 16] will be **DENIED** as moot.

### IV. PETITIONER'S § 2255 MOTION TO VACATE

The motion remaining for disposition is Petitioner § 2255 motion [Doc. 1]. Petitioner claims that the Court made errors during his sentencing hearing and that he had ineffective assistance in the entry of his guilty pleas and at sentencing. In its response in opposition [Doc. 5], the government argues that Petitioner's claims are noncognizable, procedurally defaulted, or meritless.

### A.      Standard of Review

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Jefferson v. United States*, 730 F.3d 537, 549 (6th Cir. 2013) (applying *Brecht* test to § 2255 motion). To warrant relief for a non-constitutional error, a petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error that violated due process. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000). A petitioner "must clear a significantly higher hurdle than would exist on direct appeal" to secure collateral relief. *United States v. Frady*, 456 U.S. 152, 166 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Frady*, 456 U.S. at 166).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Claims other than those of ineffective assistance of counsel are procedurally defaulted if not raised on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). The hurdle a petitioner faces to overcome a procedural default is "intentionally high[,]…for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000).

**B.     Discussion**

Petitioner's § 2255 motion asserts a claim of ineffective assistance for failing "to object to [the PSR] and sentencing enhancements that were either misapplied or duplicitous" [Doc. 1 at 3]. Petitioner's affidavit, docketed as page 6 of the § 2255 motion, contains four instances of ineffective assistance, i.e., counsel coerced and threatened Petitioner into pleading guilty, made promises to entice him to plead guilty, did not show Petitioner his PSR or discuss it with him, and failed to object to the sentencing enhancements and thereby caused an increase to Petitioner's sentence [*Id.* at 6]. The affidavit also introduces a separate claim—that the Court erred in failing to ask Petitioner personally whether he had viewed his PSR [*Id.*].

In Petitioner's memorandum brief supporting the motion, Petitioner reframes his grounds for relief as three "issues" [Doc. 2]. Issue one encompasses two arguments, namely that Petitioner's sentence is illegal because it resulted from a misapplication of the sentencing guidelines, i.e., "the four-level enhancement based on 2K2.1(b)(1)(A)", and that counsel was ineffective for failing to object to that four-level enhancement [*Id.* at 4]. Issue two is that the Court increased Petitioner's guidelines sentence by allowing his firearms to be double counted—once under § 2K2.1(b)(1)(A) and once under § 2D1.1(b)(1) (establishing a two-level enhancement for possession of a dangerous weapon) [*Id.* at 6-9]. Issue three consists of Petitioner's contentions

that he received ineffective assistance due to Attorney Spivey's failure to object to the firearms-enhancement provisions in his plea agreement and to the above sentencing guidelines enhancements in his PSR [*Id.* at 9-10].

As demonstrated by the above synopsis of claims, Petitioner's claims and "issues" are disorganized, confusing, overlapping, and repetitive. Finding those claims confusing at best, the Court actively interprets them as presenting two general grounds for relief—sentencing errors and ineffective assistance of counsel.

In its response, the United States first argues that claims based on missteps in the application of the sentencing guidelines, with limited exceptions, are not cognizable on collateral review. That argument is legally sound. *See Snider v. United States,* 908 F.3d 183, 189 (6th Cir. 2018) (explaining that a petitioner's "non-constitutional challenge to his advisory guidelines range . . . is not cognizable under § 2255"); *accord, Porter v. United States*, No. 2:09-CR-31, 2015 WL 1033881, at *5 (E.D. Tenn. Mar. 9, 2015) (listing cases). As observed in *Snider*, the collateral review statute for federal prisoners empowers a court to grant relief *only* where a sentence "was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or. . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . ." 908 F.3d at 189 (quoting 28 U.S.C. § 2255(a)).

As explained earlier, a petitioner's § 2255 claims that do not assert a constitutional or jurisdictional error generally are cognizable only if they involve "a fundamental defect which inherently results in a complete miscarriage of justice." *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974) (internal quotation marks and citation omitted in original). "A prisoner may challenge a sentencing error as a 'fundamental defect' on collateral review when he can prove that

he is either actually innocent of his crime or that a prior conviction used to enhance his sentence has been vacated." *Spencer v. United States*, 773 F.3d 1132, 1139 (11th Cir. 2014).

Nothing alleged by Petitioner furnishes a basis for finding that a miscarriage of justice has ensued from the alleged sentencing errors—all garden-variety genre of errors. Accordingly, those claimed sentencing errors are not cognizable in this § 2255 proceeding.

Respondent's second argument against granting relief is that, even if Petitioner's sentencing claims were cognizable in this collateral review petition, he has procedurally defaulted them as § 2255 grounds. This too is a correct statement of the law; sentencing claims are procedurally defaulted if not raised on direct review. *See Bousley*, 523 U.S. at 619; *Elzy*, 205 F.3d at 884. Indeed, despite the provision in Petitioner's Rule 11(c)(1)(C) plea agreement waiving direct review [Doc. 29 ¶ 10(a) in Case No. 2:14-CR-40], the Supreme Court recently has concluded that "no appeal waiver serves as an absolute bar to all appellate claims" but "only precludes challenges that fall within its scope." *Garza v. Idaho*, No. 17-1026, 2019 WL 938523, at *3-4 (U.S. Feb. 27, 2019) (citations omitted); *accord, Campbell v. United States*, 686 F.3d 353, 359 (6th Cir. 2012); *see also Bookwalter v. United States*, No. 2:14-CR-82, 2018 WL 2407525, at *3, 5 (E.D. Tenn. May 25, 2018) (finding that an argument not raised on direct appeal was procedurally defaulted, even though the petitioner had waived his right to file an appeal in the plea agreement); *Solomon v. United States*, No. 2:05-CR-92, 2011 WL 5434273, at *7 (E.D. Tenn. Nov. 9, 2011) (same). The Court finds that Petitioner failed to offer those claims on direct review and that, thereby, he has procedurally defaulted them.

"In the case where the [petitioner] has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if

unable to proceed, or (2) he is actually innocent." *Regaldo*, 334 F.3d at 528. Petitioner offers nothing to show cause and prejudice or actual innocence, and nothing appears on the face of the record that would suffice for that showing. Accordingly, Petitioner's procedural default bars collateral review of his claims of alleged sentencing errors, whether purportedly made by the probation officer or by this Court.

Respondent's final argument to support the denial of Petitioner's § 2255 motion is that the claims offered therein lack merit. Respondent's last argument also is well grounded—both in fact and in law.

### 1. Sentencing Errors

Petitioner stipulated in his plea agreement to three different enhancements: (1) a §2D1.1(b)(1) enhancement for possession of a dangerous weapon (two levels); (2) an enhancement under § 2K2.1(b)(1)(A) for possession of a number of firearms (two levels); and (3) a § 2D1.1(b)(12) enhancement for maintaining a premises for drug distribution purposes (two levels) [Doc. 29 ¶¶4(h), 4(i), and 4(j) in Case No. 2:14-CR-40]. Petitioner's primary challenge is to "the four-level enhancement based on 2K2.1(b)(1)(A)" [Doc. 2 at 4].

Section 2K2.1(b)(1)(A) provides for a two-level increase for offenses involving three or more firearms. USSG § 2K2.1(b)(1)(A). Petitioner acknowledges that, in his plea agreement, he stipulated to a two-level enhancement pursuant to § 2K2.1(b)(1) [Doc. 2 at 4]. Nonetheless, Petitioner maintains that § 2K2.1(b)(1)(A) authorizes only a two-level increase and that the probation officer who prepared his PSR used a four-level increase [*Id.*]. Petitioner insists that, absent the application of the additional two levels, his base level offense would have been 23 and the top of his guidelines range would have been 57 months. Petitioner concludes that this alleged

misapplication of the guideline cost him an additional 14 months on his sentence (71 months (actual sentence) – 57 months (correct sentence) = 14 months (difference)) [*Id.* at 5].

According to the record, Petitioner is wrong about the application of a four-level enhancement under § 2K2.1(b)(1)(A) and he is wrong about what he conceives to be his correct sentence. Petitioner was assessed two levels under § 2K2.1(b)(1)(A) for the number of firearms in connection with his felon-in-possession offense [Doc. 34 ¶31 (sealed) in Case No. 2:14-CR-40]. The only four-level enhancement applied in Petitioner's PSR was under a different guideline, namely under § 2K2.1(b)(6)(B) for possession or use of a firearm or ammunition in connection with another felony offense [*Id.* ¶32 (sealed)]. However, neither § 2K2.1(b)(1)(A)'s two-level increase or § 2K2.1(b)(6)(B)'s four-level increase could have led to a higher sentence for Petitioner. This is so because, as Respondent accurately argues, Petitioner's Morphine-conspiracy offense yielded the higher offense level; it was this offense that was used to calculate Petitioner's advisory guidelines range; and the felon-in-possession charge, at this point in the PSR calculations, became immaterial to his sentencing.

Petitioner's citation to *Alleyne v. United States*, 133 S. Ct. 2151 (2013), is not on point, is untimely, and calls for no different result [Doc. 2 at 5-6.] *Alleyne* holds that any fact, other than the fact of a prior conviction, that increases the statutory minimum penalty constitutes an element of the offense and must be submitted to the jury and found beyond a reasonable doubt. Petitioner was not sentenced to a statutory minimum sentence. Petitioner's sentence was based on the advisory guidelines (as they impacted his Rule 11(c)(1)(C) plea).

Furthermore, the Supreme Court decided *Alleyne* on June 17, 2013, whereas Petitioner was sentenced in April of 2015. Petitioner could have and should have advanced any *Alleyne*-based claims at his sentencing or on direct appeal. Petitioner's failure to raise *Alleyne*-based claims

earlier has resulted in a procedural default. Petitioner cannot show cause and prejudice (because *Alleyne* is not applicable to the facts of his case) and has not attempted so to do.

Next, Petitioner maintains that that his firearms were counted twice—once by enhancing his sentence two levels under § 2D1.1(b)(1) for the number of firearms involved in his offense and once by applying a two-level increase under 2K2.1(b)(1)(A) for possession of a dangerous weapon. Petitioner concedes that the language in the two guidelines is different, but suggests that it means the same thing in both guidelines [Doc. 2 at 8]. Petitioner points out that the firearms were discovered in his house, not outside his home and not on his person, explaining that, according to his lights, § 2D1.1(b)(1) applies to firearms found in the home, whereas § 2K2.1(b)(1)(A) applies where 3-7 firearms are in a defendant's possession [*Id.*]. Petitioner concludes that his firearms were double-counted "for the sole purpose of stretching petitioners (sic) sentence as far as possible" and that his due process rights were violated by means of these duplicitous enhancements [*Id.* at 9].

"[I]impermissible 'double counting' occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v. Gilmore*, No. 18-1517, 2019 WL 351203, at *2 (6th Cir. Jan. 28, 2019) (quoting *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999)). When considering a double-counting issue, a court asks: 1) whether double counting occurred; and 2) if it did, whether it was impermissible. *United States v. Duke*, 870 F.3d 397, 404 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1026, 200 L. Ed. 2d 284 (2018).

The questioned § 2D1.1(b)(1) two-level enhancement for possession of a dangerous weapon was applied in calculating the adjusted offense level for Petitioner's Morphine-conspiracy offense [Doc. 34 ¶ 23 (sealed) in Case No. 2:14-CR-40]. The § 2K2.1(b)(1)(A) two-level

enhancement for the number of firearms was applied only to the felon-in-possession offense [*Id.* ¶31 (sealed) in Case No. 2:14-CR-40].

As the Court has observed, Petitioner's Morphine-conspiracy offense yielded the higher offense level, it was this offense that was used to calculate Petitioner's advisory guidelines range, and, after it was grouped, the felon-in-possession charge (which included the enhancement for the number of firearms involved) was jettisoned for sentencing purposes. There was no double counting because § 2K2.1(b)(1)(A)'s two-level enhancement did not factor into Petitioner's sentence at all, much less in "two separate ways." Furthermore, it remains that Petitioner stipulated to both these enhancements in his negotiated plea agreement [Doc. 29 ¶¶ 4(h), 4(i) in Case No. 2:14-CR-40].

None of the alleged sentencing errors cited by Petitioner have merit or provide a basis for granting Petitioner the relief he seeks in his § 2255 motion.

## 2. Ineffective Assistance of Counsel

Petitioner raises multiple claim of ineffective assistance, which are governed by specific standards enunciated by the Supreme Court. A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). A court must presume that counsel's assistance was effective, and a petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (instructing reviewing courts to "remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise

of reasonable professional judgment'") (quoting *Strickland*, 466 U.S. at 690); *see also Strickland*, 466 U.S. at 689 (directing that courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)). "[T]he constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation." *Smith v. Mitchell*, 348 F.3d. 177, 201 (6th. Cir 2003) (citing *Strickland*).

Second, a petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.*, and "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted).

In a guilty plea context, to establish prejudice a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "This is an objective, not a subjective, test: 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Underwood v. United States*, No. 18-5793, 2018 WL 7140598, at *2 (6th Cir. Nov. 19, 2018) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). A court must be mindful that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). Furthermore, if "it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

### a. Failure to Object to Enhancements

Petitioner alleges that the PSR misapplied sentencing guidelines enhancements but that Attorney Spivey failed to show Petitioner his PSR or discuss it with him. Petitioner argues that counsel's alleged shortcomings resulted in prejudice because Petitioner was subjected to an incorrectly-calculated sentence and because, had those calculations been correct, his "sentence would have been lower than the [sentence] he received" [Doc. 2 at 10-11] Petitioner maintains that the Court failed to ask Petitioner personally if he had viewed the PSR—a failure that Petitioner alleges prevented him from placing his personal objections on the record [Doc. 1 at 6].

The Court has found no merit to Petitioner's claims that enhancements to his sentence were applied incorrectly. Failure to object to enhancements that were correctly applied, that were stipulated to, or that had no effect on Petitioner's ultimate sentence does not fall outside "the wide range of professionally competent assistance" which the Sixth Amendment requires. *Strickland*, 466 U.S. at 690. Additionally, no prejudice ensues from an attorney's failure to raise a meritless claim. *See Greer v. Mitchell*, 264 F.3d 663, 676 (2001); *Krist v. Foltz*, 804 F.2d 944, 946–47 (6th Cir. 1986). Petitioner's failure to show a deficient, prejudicial performance dooms this discrete claim of ineffective assistance.

Relevant to Petitioner's allegation that the Court did not address him personally to ascertain whether he had seen his PSR is Rule 32(i)(1)(A) of the Federal Rules of Criminal Procedure. That Rule provides that "[a]t sentencing, the court ... must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report[.]" Fed. R. Crim. P. 32(i)(1)(A). "A trial judge need not expressly ask the defendant if he and his counsel

have read and discussed the report; instead, "the court need only *somehow* determine that defendant and counsel have had an opportunity to read and discuss the [presentence report]." *United States v. Osborne*, 291 F.3d 908, 910 (6th Cir. 2002) (quoting *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988) (emphasis in original)).

Here, the copy of the sentencing transcript Petitioner submitted in support of his § 2255 motion shows that the Court asked Attorney Spivey whether he had "gone over the presentence report with [Petitioner]" [Doc. 2-1 at 2]. Attorney Spivey responded that, while he had not personally gone over the PSR with his client, Petitioner "was aware of it" and was "comfortable with it" due to the fact that the sentence had been agreed to by the parties [*Id.* at 2-3].

While the sentencing transcript does not show that the Court directly asked Petitioner whether he had discussed his PSR with Attorney Spivey, "[a] defense attorney's specific references to the PS[R] at sentencing provide evidence that the defendant was given this opportunity." *See United States v. Morgan*, No. 92-1456, 1993 WL 149998993, *2 (6th Cir. May 7, 1993) (citing *United States v. Manrique*, 959 F.2d 1155, 1157-58 (1st Cir. 1992)). Counsel referenced the PSR several times during the sentencing hearing. Thus, it is reasonable to conclude, on this record, that Petitioner and one of his retained attorneys had an opportunity to read and discuss the PSR. Also, because Petitioner seemingly has presented this claim as an error on the part of this Court—one which is a procedural error at most and because he failed to raise the claimed error on direct review, it has been procedurally defaulted. No showing of cause and prejudice has been offered, and no relief can be afforded on Petitioner's Rule 32(i)(1)(A) claim due to his procedural default. Finally, a court's failure to make such a determination does not "rise to the level of a constitutional due process violation," *Stevens*, 851 F.2d at 144, that can be entertained in this § 2255 proceeding.

### b.	Other Attorney Errors

As noted, Petitioner's affidavit attached to his § 2255 motion contains additional claims of ineffective assistance of counsel.  Among them are claims that Attorney Spivey coerced Petitioner to plead guilty by: (1) swearing "on [counsel's] grandkids (sic) life that [counsel] would get Mike Spiker charged with theft over $60,0000.00 and get all vehicles, tools, security cameras, bobcats, boats, tires, etc. that were stolen by Mike Spiker from [Petitioner's] garage" and (2) threatening Petitioner that, unless he accepted "the Governments (sic) plea offer, . . .  he would receive forty years in prison" [Doc. 1 at 6].

"[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats . . ., misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)."  *Brady v. United States*, 397 U.S. 742, 755 (1970).  Circumstances under which guilty pleas are subject to collateral attack are strictly limited.  *Bousley*, 523 U.S. at 621 ("'It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'" (quoting *Mabry v. Johnson*, 467 U.S. 504, 508 (1984) (footnote omitted)).

Yet, "[a] guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice."  *United States v. Stubbs*, 279 F.3d 402, 411 n.4 (6th Cir. 2002) (quoting *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998) (alteration in original) (citation and internal quotations omitted)).  *Strickland* and *Hill* affirm that a defendant is entitled to effective assistance of counsel before deciding whether or not to plead guilty.  *Strickland*, 466 U.S. at 686 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)); *Hill*, 474

U.S. at 57 (holding that *Strickland*'s "same two-part standard [is] applicable to ineffective-assistance claims arising out of the plea process"). Under certain circumstances, a petitioner's allegation of an unkept promise on the part of counsel that induced the guilty plea raises a "serious constitutional question whether his guilty plea was knowingly and voluntarily made." *Blackledge v. Allison*, 431 U.S. 63, 75 and n.8 (1977).

Before accepting a guilty plea, a district court must advise the defendant of certain rights, address the defendant in open court, determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement), and determine that a factual basis exists for the plea. Fed. R. Crim. P. 11(b). This Court typically engages in a colloquy with a defendant concerning his plea agreement and guilty pleas and to ascertain whether he understands the nature of the crimes charged, the penalties provided by law, the constitutional rights he possesses and is relinquishing by pleading guilty, and the consequences of his guilty pleas; that there is a factual basis for concluding that he committed the crime; that no threats or promises have induced his plea; and that he is pleading guilty voluntarily and knowingly.

The Court scrupulously complies with Rule 11 of the Federal Rules of Criminal Procedure governing acceptance of a guilty plea and ascertains particularly that a guilty plea is not the product of threats or promises. The Court did so here [Doc. 75, Plea Hr'g Tr. at 9, in Case No. 2:14-CR-40].[8] Petitioner is bound by the sworn statements he made in response to the Court's Rule 11 inquiries. As the Supreme Court has explained, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by

---

[8]  Indeed, the transcript shows that before the Court could finish its questions regarding whether any person had pressured Petitioner to force him to plead guilty or whether promises of a lighter sentence or leniency had factored into his decision to plead guilty, Petitioner interrupted the Court's inquiries and prematurely answered "No" to those questions [*Id.*]. Petitioner also answered "No" when the Court completed each inquiry [*Id.*].

specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 73-74. And here, unlike in *Blackledge*, Petitioner does not claim that counsel instructed him to deny the existence of any promises to ensure that the Court would accept his guilty plea. *Id.* at 68-70.

This claim is doomed for several other reasons. First, the claim is conclusory in that it lacks the specific allegations that would warrant collateral relief. A petitioner's claim that he was induced to plead guilty by his defense counsel's unkept promises can advance if it is supported by "specific factual allegations," such as "exactly what the terms of the promise were; when, where, and by whom the promise [was] made; and the identity of one witness to its communication." *Id.* at 75–76; *Black v. United States*, No. 3:07-CR-61, 2015 WL 4873086, at *9 (E.D. Tenn. Aug. 13, 2015) (noting that the "specific detailed terms of the alleged broken promise" include "when, where, and by whom such promise was made; and the identity witness to conversation") (citing *Blackledge*, 431 at 474).

Petitioner has not alleged when and where counsel made the promise to him and has not identified a witness who heard the promise being made. Thus, unlike the specific factual allegations found sufficient in *Blackledge*, Petitioner merely asserts that counsel made a promise to facilitate a theft prosecution (in state court, presumably) of a third person, who was not a party to or otherwise involved in Petitioner's federal judicial proceedings. *See e.g., Craig v. United States*, 513 F. App'x 487, 491 (6th Cir. 2013) (observing that a bare assertion that counsel gave incorrect sentencing advice without any factual details was "more conclusory than specific, unlike *Blackledge*"). A conclusory claim such as this one fails to state a claim for collateral relief. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991) (observing that bare, conclusory allegations,

unsupported by facts, cannot establish a constitutional violation); *Loum*, 262 F.2d at 867 (explaining that a motion that lacks substantiating factual contentions lacks merit).

The first claim also fails on the merits. Generally, "fundamental fairness requires that promises made during plea-bargaining and analogous contexts be respected" if the promisor is "authorized to make the promise" and if a petitioner "rel[ies] to his detriment on the promise." *United States v. Streebing*, 987 F.2d 368, 372 (6th Cir. 1993) (internal citations omitted). Neither condition has been met here. Petitioner has not shown that his attorney had actual or apparent authority to make a promise to instigate a state criminal prosecution against a third person for violation of state theft law. Petitioner has not offered any factual allegations demonstrating that, to his detriment, he relied on counsel's alleged promise. Nor does the record contain anything factual that would allow the Court to infer that Petitioner was harmed or prejudiced as a result of counsel's unkept promise.

Put simply, Petitioner has not established that his federal court plea proceedings would have turned out differently, had counsel kept that promise or had counsel not made a promise to get Mike Spiker charged with theft. *See Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.") (citation omitted).

Furthermore, counsel's purported promise would not have been enforceable. This is so because it is the prosecutor, not a defense attorney, who is endowed with broad discretion as to whether, whom, and what crimes to prosecute. *Wayte v. United States*, 470 U.S. 598, 607 (1985) (explaining that, while cabined by a belief that probable cause exists, "the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion" (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (alteration

added)).  What is more, "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," which means that a private attorney, such as is Attorney Spivey, lacks standing to invoke the judicial process to enforce state criminal laws or to bring a state criminal prosecution. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

The Court concludes that, objectively, Petitioner could not have made a rational decision to reject a plea offer and proceed to trial, given the benefits he received as a result of his plea bargain, to wit, a three-level sentence reduction for acceptance of responsibility; dismissal of seven counts alleged in the Indictment, including Count 9 for possessing firearms in furtherance of a drug trafficking offense, with its accompanying 5-year consecutive sentence and a lowering of his Rule 11(c)(1)(C) agreed-upon sentence of 78 months to 71 months to accord with his guidelines range.  Notably, the "expectation or hope of a lesser sentence or the convincing nature of the evidence against the accused are considerations that might suggest the advisability of a guilty plea."  *Tollett v. Henderson*, 411 U.S. 258, 268 (1973).  The record supports that these considerations were of paramount importance in Petitioner's decision to plead guilty.  This claim of ineffective assistance of counsel falls short on all fronts.

In his next ineffective-assistance claim, Petitioner maintains that counsel told him he would receive forty years' imprisonment if he rejected the plea offer.  There are no facts to flesh out this bare allegation.  For example, Petitioner submits no contentions concerning the effect, if any, that the challenged advice had on the plea process or on his ultimate guilty pleas.  Consequently, Petitioner's second ineffective-assistance claim is conclusory, as was his first such claim, and it cannot support the relief he requests.  *Lynott*, 929 F.2d at 232; *Loum*, 262 F.2d at 867.

If this claim were not conclusory, it falls short on the merits. A petitioner can "make an ineffective assistance of counsel claim in that h[is] counsel's sentence estimate fell below an objective standard of reasonableness, and but for h[is] counsel's erroneous sentence estimate, []he would not have taken the plea." *United States v. Turpin*, 155 F. App'x 887, 894 (6th Cir. 2005) (alterations added).

Here, the maximum sentence that Petitioner could have received upon convictions for the nine offenses charged in the Indictment, had a § 851 notice of his prior conviction been filed (as it surely would have been), would have been thirty-five years in prison. (The maximum term of imprisonment for Count 1, assuming the filing of the § 851(a)(1) notice, would have been 30 years; a consecutive 5 years' imprisonment for Count 9; and 10-year sentences for Counts 3-8, set concurrently.) Under some circumstances, an attorney's "good faith but markedly erroneous estimate of a likely sentence could be deemed objectively unreasonable." *Thompson v. United States*, 728 F. App'x 527 (6th Cir. 2018) (counsel's estimate of "70 to 87 months consecutive to 10 years" sentence exposure if defendant rejected plea deal compared to 40-year sentence imposed after trial was so "wildly off-target" that it could amount to a deficient performance). Here, counsel's purported estimate of a forty-year sentence is not "wildly off-target" from the thirty-five years' imprisonment Petitioner could have faced upon a trial and conviction of all counts.

Additionally, counsel's incorrect advice regarding a defendant's sentence exposure can be neutralized by a proper plea colloquy. *Id.*, 728 F. App'x at 535 ("When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea." (quoting *United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017))). Here, Petitioner was advised correctly of the maximum penalty to which his pleas exposed him,

thus clearing up any misunderstanding engendered by counsel's purported overestimate of the possible sentence he could receive [Doc. 75, Plea Hr'g Tr. at 14-15 in Case No. 2:14-CR-40].

In sum, because Petitioner's ineffective assistance claims are conclusory in the first instance and meritless in the second, Attorney Spivey did not render a prejudicial performance with respect to his assorted shortcomings asserted by Petitioner. *See Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) (no constitutional deficiency in failing to raise meritless issues). Nor does prejudice ensue from a failure to make a groundless objection. *See, e.g., Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (explaining that counsel cannot be held constitutionally ineffective for failing to pursue a meritless claim or raise a meritless objection); *United States v. Fry*, 831 F.2d 664, 669 (6th Cir. 1987) (failure to raise a meritless objection at sentencing not ineffective assistance).

## V.    CONCLUSION

For the reasons discussed in this Memorandum Opinion, Petitioner's motion to amend his § 2255 motion [Doc. 15] will be **DENIED**; his motion to remove his motions seeking documents [Doc. 24] will be **GRANTED**; his motions for documents or to compel discovery [Docs. 6-7] will be **TERMINATED**; his motion for a ruling on his § 2255 motion [Doc. 13] will be **GRANTED**; his motion for default on the government [Doc. 16] will be **DENIED**; and his § 2255 motion to vacate [Doc. 1] will be **DENIED** and **DISMISSED.**

Finally, under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in

a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).

A certificate of appealability should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. Petitioners whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id.*; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

Having examined each of Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find the dismissal of such claims to be debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

A separate order will enter.

**IT IS SO ORDERED.**

ENTER:

_____
s/ Leon Jordan
United States District Judge